[No. 21259. Department One. October 11, 1928.]

EMMA REED, *Plaintiff*, v. HARRY REED, *Defendant.*

*In the Matter of the Contempt of* HARRY REED, *Appellant.*[1]

*Williams & Cornelius*, for appellant.

PARKER, J.—This is an appeal brought to this court by Harry Reed from an order of the superior court for Spokane county, adjudging him guilty of contempt of court, and as punishment sentencing him to imprisonment for a term of thirty days for his alleged violation of a restraining order, issued at the instance of Emma Reed, his wife, upon her commencement of a divorce action against him in that court.

On December 5, 1927, Mrs. Reed commenced, in the superior court, an action seeking a divorce from Mr. Reed, a division of their property, and suit money; and, pending the action, an injunction restraining him from doing certain acts. Upon the filing of the complaint and an affidavit on that day, the court issued an *ex parte* show cause restraining order, restraining Mr.

[1]Reported in 270 Pac. 1028.

Reed from visiting or molesting the plaintiff at their home or elsewhere, and from secreting or disposing of any of their property, until the further order of the court. On December 17, 1927, W. C. Donovan, who had been Mrs. Reed's attorney in the commencement of the divorce action and in the procuring of the restraining order, assuming to act as her attorney and in her behalf, initiated, by his affidavit filed in the case, this contempt proceeding, seeking to have Mr. Reed punished for contempt for his alleged violation of the restraining order.

A show cause order having been issued upon Donovan's affidavit, the contempt proceeding came on for hearing upon the merits on January 3, 1927. Donovan appeared as attorney for the prosecution, apparently assuming to appear for Mrs. Reed, though his authority in that behalf was challenged upon the ground that Mrs. Reed had discharged him prior to that time. However, the trial judge permitted Donovan to proceed as attorney for the prosecution in the contempt proceeding which was submitted for final decision upon affidavits of Mr. and Mrs. Reed, Donovan and four others.

Just when Mr. Reed was served with the restraining order is not made plain, but we assume, for the sake of argument, that such service was made upon him on December 5, 1927, and that the restraining order was in form effective at the time of its alleged violation. Mr. Reed says in his affidavit that:

"On the 6th day of December, 1927, this defendant was called by telephone by the plaintiff and a reconciliation took place, and ever since said time plaintiff and defendant have been living together as husband and wife; that plaintiff has released defendant from any claims by reason of the order made on the 5th day of December, 1927. . . .

"That, as far as the money and property of the parties hereto are concerned, this defendant has not in any way interfered with the same, nor has he taken into his possession any of said personal property, or removed the same from any banks or safety deposit boxes, but that the property of the plaintiff and defendant remains just as it did at the time of the commencement of this action."

Mrs. Reed says in her affidavit that:

"On the evening of the 6th day of December, 1927, and one day after the commencement of the above entitled action, at the request of affiant, the defendant, Harry Reed, came back to the home of plaintiff and defendant, and plaintiff and defendant became reconciled, and agreed to and did settle all of their differences, and affiant then and there agreed to dismiss the above entitled action and release defendant from any further liability by reason of said action or any orders made therein, and then and there agreed with said defendant that it was not necessary for him to take any further action in said case, and that affiant would cause the same to be formally dismissed of record; that said evening affiant and defendant resumed marital relations, and at said time and at all times thereafter have lived together as husband and wife."

Affidavits of others presented to the court upon the hearing strongly corroborate the above quoted statements made in the affidavits of Mr. and Mrs. Reed. Indeed, there is no substantial evidence to the contrary. There are statements in the affidavit of Donovan, and the affidavit of another supporting his statements, indicating want of knowledge on his part of the reconciliation of Mr. and Mrs. Reed, which may furnish justification for his initiating the contempt proceeding; but his statements do not contradict the fact of the reconciliation between Mr. and Mrs. Reed actually having occurred on December 6, the day following the commencement of the divorce action; nor do they contradict the fact that Mr. Reed went to visit her looking

to such reconciliation upon her express invitation. The record before us leaves no doubt that Mrs. Reed has at no time consciously sanctioned the prosecution of this contempt proceeding against her husband.

It is plain that the restraining order which Mr. Reed is charged with violating was issued at the instance of Mrs. Reed looking solely to the protection of her private rights. It is also plain that she requested him to come to their home to see her with a view of effecting a reconciliation. Her right to have the restraining order remain effective to prevent his visiting her was purely her private right subject to be voluntarily waived by her. We concede that her waiver of that right must have been clear and unequivocal to render him immune from liability as for contempt; but his visit was the result of more than mere consent and acquiescence on her part; it was the result of an express invitation by her looking to the laudable purpose of reconciliation, a purpose always favored by the courts in such cases.

The decisions of the courts seem not wholly harmonious touching the question of when waiver of the protecting terms of an injunction by the party at whose instance it is issued, looking to the protection of his or her private right, will render one who acts contrary to its terms immune from contempt punishment for such acts. However, when the circumstances of each decided case, in so far as they have come to our notice, are critically considered, this seeming conflict of authority does not appear to us to be to any substantial extent real.

We think the law, recognized by the decided weight of authority, is that, when an injunction, issued at the instance of a private party looking solely to the protection of his or her claimed private right, is violated by the doing of an act contrary to its terms, upon the

express solicitation of the one whose private right is so protected, the one so acting is immune from contempt punishment therefor. No decision has come to our notice holding an accused person guilty of contempt for the doing of an act contrary to the terms of an injunction, when the act is the result of clear, affirmative solicitation of the one at whose instance the injunction was issued, there being no other private or public interest involved. 13 C. J. 44; 32 C. J. 493; see note in 9 L. R. A. (N. S.) 304. Observations are made in our decisions in *Hillman v. Hillman,* 42 Wash. 595, 85 Pac. 61, 114 Am. St. 135, and *Yoder v. Yoder,* 105 Wash. 491, 178 Pac. 474, 3 A. L. R. 1104, plainly evidencing our view that the courts should be ever ready to encourage amicable settlement of litigation, especially reconciliation ending divorce litigation.

We are not favored with any brief or argument in behalf of the prosecution. The trial court did not make any formal findings of fact upon which it based its order adjudicating Mr. Reed to be in contempt; but, by the remarks of the judge made in announcing his decision, embodied in the statement of facts, he appears to have proceeded upon the theory that Mr. Reed's guilt was in visiting Mrs. Reed and in making some disposition or interference with their property in violation of the terms of the restraining order. As to the former, he was rendered immune by the solicitation of Mrs. Reed; and as to the latter his guilt was not proven.

The order adjudging Mr. Reed guilty of contempt is reversed.

FULLERTON, C. J., TOLMAN, FRENCH, and MITCHELL, JJ., concur.