STATE *ex rel.* FLOYD S. TAYLOR, *et al.*

*v.*

HARRY C. DEVORE

(No. 10168)

Submitted January 17, 1950. Decided March 28, 1950.

RILEY, JUDGE, dissenting.

*Marcum & Gibson,* for plaintiff in error.

*Edward H. Greene, C. M. Morgan,* for defendants in error.

GIVEN, JUDGE:

The defendant Harry C. Devore was found guilty of contempt by the Common Pleas Court of Cabell County. Judgment was entered against him, imposing a fine of $250.00, and a jail sentence of thirty days. This judgment was affirmed by the Circuit Court of Cabell County, and this Court granted a writ of error and supersedeas.

On December 8, 1947, an order was entered by the Court of Common Pleas of Cabell County in a chancery cause therein pending enjoining Devore from practicing dentistry. Devore denied the allegations contained in the bill of complaint, to the effect that he was unlawfully engaged in the practice of dentistry, but announced to the court that he "did not desire to contest and contend in this matter any further and that he was willing that the court grant to the plaintiffs a permanent injunction, as prayed for in said bill, restraining him from the practice or the offer to practice dentistry and dental hygiene * * *." The pertinent part of the order reads:

"IT IS THEREFORE, ADJUDGED, ORDERED AND DECREED that the plaintiffs are entitled to a permanent injunction as prayed for in said bill, and that the defendant, Harry C. Devore, is hereby enjoined, restrained and inhibited perpetually from practicing or offering to practice dentistry or dental hygiene in the state of West Virginia, as defined by Article 4, Chapter 30 of the Code of West Virginia, until he may acquire a license to practice dentistry from the Board of Dental Examiners of the state of West Virginia."

Pursuant to the prayer of the petition filed by the plaintiffs below, Floyd S. Taylor, B. W. West, D. R. Parsons and J. F. Gawthrop, who were also plaintiffs in the chancery cause, and who sued for the benefit of themselves and all others practicing the profession of dentistry similarly situated, and for and on behalf of the Huntington Dental Society, the Common Pleas Court, on September 10, 1948, entered an order directing that a rule issue against Devore commanding him to appear at a time and place certain and show cause why he should not be held in contempt for disobeying the injunction order. Devore demurred to the petition and rule, the principal grounds of the demurrer being that the petition did not show that the injunction order was ever served on Devore, and that the acts alleged to have been done by Devore did not come within the definition of practice of dentistry or dental hygiene as defined by Code, 30-4-2. The court overruled the demurrer and thereupon Devore filed his answer to the petition denying that he violated the injunction and alleging that the petitioners entered into an unlawful conspiracy with criminal intent of entrapping the defendant into violation of the injunction order.

Upon the trial, had before the court, plaintiffs below introduced five witnesses, Iva Webb, Wandell Tackett, Betty Gunderson, W. E. Workman and Thomas Carr. Iva Webb testified to the effect that on or about May 27, 1948, she was informed that Devore "made good teeth and made them cheap"; that she was in need of teeth; that she went to the office of Devore in Huntington for the purpose of obtaining teeth; that Devore looked at her gums and

advised her that her gums were not sufficiently healed for the taking of an impression; that she went back to his office two times subsequently and received from him her teeth; that she paid for the teeth in two payments and received a receipt for the payments from the office girl "at Mr. Devore's office." In her examination in chief she was not positive that Mr. Devore was the person she saw at the office, but stated that she thought he was the person. She also testified that only the man who took the impression and the office girl were at the office. On cross-examination, she was asked: "Are you positive that this man took your impression and made your false teeth? I am pointing to him, at the table." She answered: "I am not positive. He doesn't look like the same man."

Wandell Tackett testified to the effect that she accompanied her sister, Iva Webb, to the office of Devore on two occasions; that the name H. C. Devore was on the office door; that she did not see any one in the waiting room, but that some one came to the door and said "next"; that the purpose of her sister in going to the office was to have teeth made; that her sister got the teeth there and was wearing them at the time of the trial.

Betty Gunderson testified to the effect that about the middle of July, 1948, she went to Devore's office for the purpose of having teeth made; that she made three trips to the office; that she needed teeth; that on the first trip Mr. Devore made the impression of her gums; that the second time she went to the office he "tried them on in my mouth, it was a rough finish," and the "third time he put them in and fitted them * * *." She also testified that she paid the lady in the office of Mr. Devore $15.00 the first trip, and $50.00 the second trip, and that when she offered to pay Devore he said "to pay the lady at the desk" and that she received receipts for the payments.

The witness Workman testified that in June, 1948, he went to Devore's office and "told the lady that he wanted to see about getting teeth made and she said o. k. and she saw Mr. Devore and he came in and told me to come on in

the office, and I went into the office and he taken the impression" for both the upper and the lower teeth; that a few days later he got his teeth; that he paid $15.00 at the time the impression was made and $50.00 when he got the teeth; that he offered to pay Devore but that Devore told witness to pay the girl in the office and that he got receipts for the payments from the girl.

Thomas Carr, age sixteen, testified to the effect that he went with Workman to the office of Devore on two of the occasions testified to by Workman; that Devore asked them their names and what they wanted; that Devore took the impression for Workman and fitted the teeth; and that Workman paid the lady in the front office.

It is not questioned that the witnesses Gunderson, Workman and Carr were employed by Lloyd Worden, a private detective; that these witnesses went to the office of Devore at the instance of Worden for the purpose of obtaining evidence as to whether Devore was practicing dentistry; that they were paid for the services by Worden or that Worden was in turn employed by the plaintiffs below for the purpose of obtaining such evidence; also Mrs. Gunderson was falsely represented to Mr. Devore by Workman as being his daughter.

The evidence in the case has been set out fully for the reason that the defendant contends that it is not sufficient to support the finding of the court below, and because of the contention of the defendant that the evidence of Gunderson, Workman and Carr was obtained by entrapment.

Two witnesses testified on behalf of the defendant; Lloyd Worden who testified to the effect that he, acting for plaintiffs below, employed Gunderson, Workman and Carr, as above indicated, and Abra Lou Adkins who denied that the name of Devore was on his office door, but testified that the sign "H. C. Devore, Dental Laboratory" was attached above his door. The defendant did not testify in his own behalf and offered no evidence on the main issue.

It seems clear that this is a criminal contempt proceeding. In 12 Am. Jur., Contempt, Section 6, it is stated:

"Proceedings for contempt are of two classes—namely, criminal and civil. Criminal contempt proceedings are those brought to preserve the power and vindicate the dignity of the court and to punish for disobedience of its orders. Civil contempt proceedings are those instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made for the benefit of such parties. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly interested in their conduct and prosecution are those individuals for the enforcement of whose private rights and remedies the suits were instituted. * * *"'

Rules of evidence applicable on a trial of a criminal action apply in such a proceeding. 4 Michie's Jur., Va. & W. Va., Contempt, Section 3. There appears to be some confusion in the decisions of the Court as to whether a writ of error from this Court will lie in a criminal contempt proceeding. See *State* v. *Bittner,* 102 W. Va. 677, 136 S. E. 202, 49 A.L.R. 968; *Smith* v. *Smith,* 81 W. Va. 761, 95 S. E. 199, 8 A.L.R. 1149. Where a defendant has been found not guilty of criminal contempt, this Court has no jurisdiction to review the decision. *Craig* v. *McCullough,* 20 W. Va. 148. At the time of the decision of the *Bittner* case there was a statute in force (Section 4, Chapter 160, Code, 1923) which impliedly withheld the right of a writ of error to a judgment for contempt of a circuit court for the nonperformance of or disobedience to a decree or order. (That section has been omitted from the Code since 1931.) Notwithstanding the provisions of that statute, the Court held that where the freedom of a person is involved the writ lies. We think this conclusion correct. Constitution, Article VIII, Section 3; Code, 51-1-3.

We see no merit in the defendant's contention that he was not served with a copy of the injunction order. He

agreed to the entry of that order and the petition alleging violation of the injunction order so states.

The defendant contends that the evidence did not establish that he was engaged in the practice of dentistry. The pertinent part of the statute, Code, 30-4-2, reads:

"Any person shall be regarded as practicing dentistry within the meaning of this article, who shall diagnose or profess to diagnose or treat or profess to treat, any of the diseases or malformations or lesions of the oral cavity, teeth, gums, or maxillary bones, * * * or supply artificial teeth as substitutes for natural teeth, * * *."

From this it seems clear that the examination of the mouth, and the taking of the impression thereof, and the fitting and supplying of artificial dentures are acts falling within the definition of the practice of dentistry. Is the finding of the lower court that the defendant was engaged in the practice of dentistry established by the evidence? This being a criminal contempt proceeding, guilt must be established beyond a reasonable doubt. *State* v. *Bittner, supra.* This brings us to the contention of the defendant that the evidence of the witnesses Gunderson, Workman and Carr was obtained by entrapment and therefore cannot be considered by the Court. In *State* v. *Jarvis,* 105 W. Va. 409, 143 S. E. 235, this Court stated:

"Entrapment may be defined as the inducement of one to commit a crime not contemplated by him for the mere purpose of instituting criminal prosecution against him. *U. S.* v. *Wray,* 8 Fed. (2d) 429. In order for a defendant to successfully invoke this doctrine, it must appear that the criminal intent—'the genesis of the idea'—was conceived by the entrapping person, and that the accused, without prior intention to commit the crime, was inveigled into its commission by the entrapper.

"The evidence here does not sustain the defense of entrapment. The defendant was not plastic clay in the hands of the entrappers. She was not coerced, importuned or even persuaded by them. No favors were asked, promised or bestowed. No

confidence was violated. The only inducement offered was willingness to buy. It is not shown that the sale price was so exorbitant as to tempt defendant to do something unusual. The transaction was an ordinary one of barter and sale. Her act was not one of impulse, but was the voluntary and deliberate result of the conference with her confederate. The circumstances surrounding this sale warrant the inference that she would have made a like sale to any other person applying, not to her mind a probable informer.

"Of course this particular sale would not have occurred except for the trap of the officers. But that artifice simply afforded the defendant an opportunity to do what she was evidently both willing and prepared to do. While the officers furnished her the opportunity to violate the law, they were not responsible for her possession of the liquor she delivered nor for her apparent willingness to sell it. That possession and the voluntary sale sufficiently indicate a prior intention on her part to thus violate the law upon occasion. It is not the decoy of a criminal which public policy condemns, but the implanting of the germ of criminality, no matter how favorable the culture. A clear distinction is to be drawn between a deception practiced to detect crime and one which creates crime. The purpose of the deception here was obviously not primarily to incite an offense, but to ascertain whether the defendant was engaged in an unlawful business. This purpose is held to be a sufficient answer to the argument that the act was done at the instigation of an agent of the Government. *U. S.* v. *Pappagoda,* 288 Fed. 214, 220; 8. R. C. L., sec. 105, p. 129."

See *State* v. *Bierce,* 113 W. Va. 640, 169 S. E. 478.

The majority of the Court are of the opinion that the conduct of the plaintiffs below in the use of the private investigator and in the obtaining of evidence in the manner hereinbefore set out should be condemned, and that their conduct in connection therewith, under the circumstances of this case, constitute entrapment, and that such evidence should not be considered in determining the guilt of the defendant. The writer of this opinion is not

of that view, since he believes that no special inducements were offered the defendant by any of the witnesses to furnish the teeth; the witnesses having merely gone to Devore's office, made known their wants, and paid the price asked for service, the transaction being merely one of ordinary "barter and sale." However, the majority of the Court are also of the view that the evidence in the case, other than the evidence of the witnesses Gunderson, Workman and Carr fully support the finding of guilt beyond any reasonable doubt as made by the lower court. This evidence has been fully detailed above. Undoubtedly defendant maintained an office or place of business. His own witness so states and further says that there was the sign "H. C. Devore Dental Laboratory" over the door. He kept employed an office girl to assist him in his business. The witness Webb went to his office for the purpose of obtaining teeth and Devore examined her gums, advised her to come back later for the impression. Later Devore took the impression, made the teeth and furnished them to her, and she paid the office girl for the teeth. This witness was corroborated by the witness Tackett. It seems clear that Devore was not only maintaining an office, but was keeping himself in readiness to furnish teeth at any time. It is true that the witness Webb was not positive in her identification of the defendant, but his identity cannot be doubted in view of the other facts present in the case.

The other errors assigned do not merit consideration here. The judgments of the Circuit Court of Cabell County and of the Court of Common Pleas of Cabell County are affirmed.

*Affirmed.*

RILEY, JUDGE, dissenting:

With deference I dissent from the result reached by the majority of the Court. In reaching this position, I am impressed by the facts that (1) at the time the Huntington Dental Society, acting through its representatives, employed and paid a professional investigator, Lloyd Worden, who, in turn, employed the State's witnesses, Betty

Gunderson, W. E. Workman, and Thomas Carr to go to the office of the defendant, Harry C. Devore, at various times for the purpose of obtaining partial plates or complete sets of false teeth, the cost of which was financed indirectly through Worden by the Huntington Dental Society, the contempt proceeding had not been instituted, and the solicitation on the part of these witnesses was necessarily for the purpose of causing the violation of the injunction; and (2) the instant proceeding is one of criminal contempt, and all the rules of criminal procedure, including the rule that the defendant's guilt must be proved beyond a reasonable doubt, were applicable and should have been applied by the trial court.

I am fully aware that this Court in strictly criminal proceedings has held admissible the testimony of witnesses who obtained evidence by a method similar to that used by the Worden investigating agency to the effect that a defendant was engaged in the violation of a criminal law, provided the criminal intent was not conceived by the "entrapping" person and the accused "without prior intent to commit the crime was inveigled into its commission by the entrapper." *State* v. *Jarvis,* 105 W. Va. 499, 143 S. E. 235. The distinction made by this Court in the *Jarvis* case, while it may be sound, is admittedly hard to follow and apply, for in every case involving the circumstances in which evidence has been obtained by a person seeking it, the crime is committed at the instance of such person. Dangerous in its application as I think the rule in the *Jarvis* case is, it is perhaps too late, in view of the adjudicated cases, for this Court to deviate from the rule as enunciated in the *Jarvis* case and quoted in the majority opinion.

But, as heretofore indicated, at the time the evidence was obtained by the three employees of the investigating agency, at the instance of the dental society, the defendant, Harry C. Devore, was under an injunction, and this record clearly shows the three witnesses, Gunderson, Workman and Carr, were employed and paid by the Huntington Dental Society, through its representatives, on whose

behalf the injunction was sought and entered, to cause the defendant, Harry C. Devore, to violate that injunction. All of this was prior to the time that any contempt proceeding was or could have been instituted. So these parties in their activities were in a court of equity. Generally, "The party at whose instance an injunction issued, cannot have the party enjoined punished in a contempt proceeding for breach of the injunction, when the breach was committed with his consent or acquiescence, or where the breach was provoked by him." 32 C. J., Injunctions, Section 859, page 493. In *Canada Foundry Co.* v. *Emmett,* 2 Ont. W. R. 1102, the Court said: "However, such methods may be regarded in criminal law, it is not desirable to encourage them in a court of equity. To get equitable relief one must come into court with clean hands * * * and a suitor cannot expect the extraordinary power of the court exercised by way of injunction and committal to be directed in his favor, if he himself procures or prompts the acts complained of." See also *Reed* v. *Reed,* 149 Wash. 352, 270 P. 1028, involving the protection of a private right; and *Sparkman* v. *Higgins,* C.C.S.D. N. Y. 22 Fed. Cas., p. 879, No. 13,209, involving an injunction restraining the infringement of a patent. In short, in my opinion, the witnesses, Gunderson, Workman and Carr, were employed by the investigator, Lloyd Worden, who, in turn, was employed by the plaintiffs in the injunction proceeding, to have the defendant, Harry C. Devore, violate the court's injunction and thus flout the jurisdiction and the dignity of the Common Pleas Court of Cabell County, and in that court they should not be heard to complain of defendant's violation of the court's injunction induced by their own activity.

It necessarily follows that I agree with the position attributed to the majority of the Court in the majority opinion that the testimony of Gunderson, Workman and Carr should be disregarded.

I do not agree, however, that there is in this record sufficient evidence independent of the testimony of Gun-

derson, Workman and Carr to sustain the conviction for contempt. This being a criminal contempt, "It is a quasi criminal proceeding, and the rules of evidence in criminal trials apply thereto. In such trial the guilt of the accused [must] be proved beyond a reasonable doubt." *State ex rel. Continental Coal Co. v. Van A. Bittner,* 102 W. Va. 677, pt. 2, syl., 136 S. E. 202, 49 A. L. R. 968. Besides the witnesses employed by the investigating agency, Iva Webb and Wandell Tackett were the only other witnesses who testified for the State, and, unless their testimony establishes defendant's guilt beyond a reasonable doubt, the judgment of conviction and sentence cannot be sustained. Iva Webb, the record discloses, went to Devore's office on her own initiative, having no connection with the investigating agency. She testified that she had a set of upper teeth made, and paid the office girl ten dollars and later, when she received the teeth, she paid the office girl thirty-five dollars. This witness, however, was unable to identify Devore as the person who did the work for her, so that the trial court, acting in lieu of a jury, could not have found on the basis of her testimony alone beyond a reasonable doubt that defendant made and furnished the set of upper false teeth to the witness in violation of the injunction. On cross-examination the witness was asked: "Are you positive that this man took your impression and made your false teeth? I am pointing to him at the table," to which the witness replied, "I am not positive. *He doesn't look like the same man."* (Italics supplied.) The State's witness, Wandell Tackett, Iva Webb's sister, testified that she had accompanied her sister to an office which had the name "Harry C. Devore" on the door; that someone came to the door and said, "Next"; that her sister's purpose in going to the office was to have teeth made; and that her sister got a set of teeth there and that she was wearing them at the time of the trial. Likewise, this witness was unable to and did not identify the defendant. Therefore, I am of the opinion that the evidence tending to establish Devore's guilt, while it may satisfy the rules of civil practice and procedure, does not measure up to the high standards required in a criminal case. Clearly

the State has failed to prove its case beyond a reasonable doubt.

For the foregoing reasons I would reverse the judgment of the Circuit Court of Cabell County, and dismiss the contempt proceedings.