[No. 18844-9-II.   Division Two.   October 10, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN DANIEL DEJARLAIS, *Appellant*.

*Linda J. King*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

BRIDGEWATER, J. — Steven Dejarlais appeals his convictions for violation of a protection order and third degree rape. We hold that a victim cannot waive a domestic violence protection order by consent and that the victim's testimony that sexual intercourse occurred was substantial evidence of penetration. We affirm.

Kimberly Shupe obtained a protection order against Dejarlais on September 23, 1993, that was effective until September 23, 1994. The order prevented Dejarlais from "[c]ontacting or attempting to contact [Shupe] in any manner" or "[g]oing within 100 feet of [Shupe's] residence and workplace." Shupe obtained the protection order to avoid being held in contempt of a parenting plan in her pending dissolution from Mr. Shupe. With Shupe's consent, Dejarlais continued to stay overnight several times each week even after the protection order went into effect.

Dejarlais went to Shupe's home on May 22, 1994. He knocked on her door and, when there was no answer, he entered. He found her inside. She told him she wanted nothing to do with him, then she walked away from him toward her bedroom.

Dejarlais followed Shupe and, once in the bedroom, he told her "I'll just have you one more time" and then he had sexual intercourse with her over her repeated objections. After a while, he again had sexual intercourse with her; again she said no. Finally, she convinced him to leave the apartment. Once he was gone, she called two friends and asked them to come over.

Dejarlais returned and again threatened Shupe. Once

her friends arrived, Shupe asked Dejarlais to leave, and he did. Shupe then called the police and reported the rape.

I

Dejarlais argues that the trial court erred when it refused to instruct the jury that a person is not guilty of violation of a protection order where the person protected by the order has consented in the past to the defendant's presence in violation of the order. Dejarlais contends that because Shupe continued to allow him to stay overnight at her apartment even after the protection order became effective, he could not be guilty of violating the order.

Dejarlais was convicted of violation of a protective order under RCW 26.50.110, which provides in relevant part:

> (1) Whenever an order for protection is granted under this chapter and the respondent or person to be restrained knows of the order . . . .
>
> . . . .
>
> (4) Any assault that is a violation of an order issued under this chapter and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of a protective order issued under this chapter that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.

The trial court instructed the jury that "A person commits the crime of violation of a[n] order for protection when that person knowingly violates the terms of an order for protection." Dejarlais's proposed instruction stated: "If the person protected by a Protection Order expressly invited or solicited the presence of the defendant, then the defendant is not guilty of Violation of Protection Order," citing *Reed v. Reed*, 149 Wash. 352, 270 P. 1028 (1928). The court refused to give Dejarlais's proposed instruction, finding that *Reed* was limited to its facts and should not be expanded. Dejarlais argued that the instruction was

justified because Shupe "implicitly, invited him over, because they were basically living together."

■■ The parties are entitled to jury instructions that, taken as a whole, properly instruct the jury on the applicable law and allow each party the opportunity to argue his or her theory of the case. *State v. Cyrus*, 66 Wn. App. 502, 508, 832 P.2d 142 (1992) (citing *State v. Hoffman*, 116 Wn.2d 51, 804 P.2d 577 (1991), *affirmed by McGinnis v. Blodgett*, 67 F.3d 307 (9th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996)), *review denied*, 120 Wn.2d 1031 (1993). The court does not err in rejecting a proposed instruction if that instruction does not correctly characterize the law.

In *Reed*, the restraining order was issued in the course of a divorce case. The restraining order prohibited Mr. Reed from "visiting or molesting" Mrs. Reed at their home or elsewhere, 149 Wash. 352-53. The Reeds reconciled and cohabitated, but Mrs. Reed's attorney initiated a contempt proceeding to deal with Mr. Reed's violation. He was punished by 30 days' imprisonment, but the Washington Supreme Court reversed, holding that Mrs. Reed had waived the restraining order by reconciliation and her express invitation. The Court held:

> We think the law, recognized by the decided weight of authority, is that, when an injunction issued at the instance of a private party, looking solely to the protection of his or her claimed private right, is violated by the doing of an act contrary to its terms, upon the express solicitation of the one whose private right is so protected, the one so acting is immune from contempt punishment therefor. No decision has come to notice holding an accused person guilty of contempt for the doing of an act contrary to the terms of an injunction, when the act is the result of clear, affirmative solicitation of the one at whose instance the injunction was issued, *there being no other private or public interest involved.*

*Reed*, 149 Wash. at 355-56 (emphasis added).

The issue is whether Dejarlais was entitled to an

instruction telling the jury to acquit him if Shupe invited his presence, based solely on the authority of *Reed.*

## A. Consent Not a Defense

Violation of a domestic violence protection order, with certain other requirements, is a crime under RCW 26-.50.110. This crime is referenced in other criminal statutes: it is one of the crimes upon which the crime of harassment may be based (RCW 9A.46.060(35)); it is one of the crimes upon which an arrest may be effected without a warrant (RCW 10.31.100(2)(a)).

■■ Dejarlais concedes that consent is not set forth as a defense in the statute, and RCW 26.50.110 does not make the victim's lack of consent an element for conviction, but requires only that the defendant know of the order and is in violation of its terms. In RCW 10.99.010, the Legislature stated that with regard to domestic violence laws, "it is the intent of the legislature that criminal laws be enforced without regard to whether the persons involved *are or were* married, cohabiting, or involved in a relationship." (Emphasis added.) We will not create a defense where the legislation does not permit it. Thus, Dejarlais's argument fails upon review of the statute.

## B. Legislative Intent/Public Policy

■ The legislative intent in passing domestic violence laws is to reduce the occurrence of domestic violence. LAWS OF 1992, ch. 111, § 1. The laws effectuate this intent through attempting to give a domestic violence victim the full protection of the laws. Toward that end, a court order is issued in the hope that this will reduce the abuser's power over the victim. The rule suggested by Dejarlais would not serve that purpose because a victim of domestic violence would be left legally defenseless after soliciting the presence of or having consensual contact with her abuser.

■ Indeed, the statute itself demonstrates that the

Legislature did not intend to allow only the victim to enforce the protection order. For example: a peace officer shall arrest based upon probable cause of violation, RCW 26.50.110(2); a peace officer may initiate a show cause hearing, former RCW 26.50.110(5) (1992); and, a court hearing is required to modify the terms of a domestic violence protection order, RCW 26.50.130. After modification in a court proceeding, notice is to be given to all law enforcement agencies. RCW 26.50.130. These provisions would be unnecessary or unenforceable if modification without court approval were possible.

Further, to allow reconciliation to void a court order in domestic violence issues would be to ignore the role reconciliation plays in the cycle of violence. Our courts have recognized the battered woman syndrome and that forgiveness and reconciliation occur routinely after an episode of violence and prior to another episode of increased violence. These victims are vulnerable and in a condition of "learned helplessness." *See State v. Allery*, 101 Wn.2d 591, 596-97, 682 P.2d 312 (1984); *State v. Riker*, 123 Wn.2d 351, 362, 869 P.2d 43 (1994); *State v. Ciskie*, 110 Wn.2d 263, 751 P.2d 1165 (1988). To allow reconciliation to void a domestic violence protection order without court approval would be a reversion to the past, ignoring the increase of violence that prompted this legislation, and would subject victims to increasing risk, which they may be unable to avoid because of the "learned helplessness" of the syndrome.

Thus, legislative intent and public policy dictate that reconciliation and consent should not void a domestic violence protection order.

## C. *Reed* Inapplicable

*Reed*'s holding is also inapplicable based upon its own language and the intent of RCW 26.50 that domestic violence is a public concern. *Reed* relies on the idea that a protection order is merely a private right of enforcement

that may be waived by the victim. But *Reed* also stated that this was the case "there being no other private or public interest involved." *Reed*, 149 Wash. at 356.

The Legislature has clearly indicated that there is a public interest in domestic violence protection orders. In its statement of intent for RCW 26.50, the Legislature stated that domestic violence, including violations of protective orders, is expressly a public, as well as private, problem, stating that:

> Domestic violence is a problem of immense proportions affecting individuals as well as communities. Domestic violence has long been recognized as being at the core of other major social problems: Child abuse, other crimes of violence against person or property, juvenile delinquency, and alcohol and drug abuse. Domestic violence costs millions of dollars each year in the state of Washington for health care, absence from work, services to children, and more.

LAWS OF 1992, ch. 111, § 1. Thus, *Reed* is distinguishable and Dejarlais's argument fails.

All persons affected by protection orders are served by a clear rule of enforcement, which removes any doubt of the legal implications in violating the terms of a protection order. Furthermore, the parties may protect their rights by petitioning the court to remove the order if there has been a change in circumstances. For these reasons and those expressed above, the proper rule is that only the court from which a protective order issued may rescind the order, and the actions of the victim do not act as a waiver of its effectiveness. We do not rule on any other defenses, other than consent, which may be available. Therefore, the trial court did not err when it refused to give Dejarlais's proposed instruction.

## II

■■ ■■ Dejarlais further argues that substantial evidence does not support his conviction for third degree rape because there was insufficient evidence that sexual

intercourse occurred.[1] Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). In determining whether the necessary quantum of proof exists, the reviewing court need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case. *State v. Galisia*, 63 Wn. App. 833, 838, 822 P.2d 303, *review denied*, 119 Wn.2d 1003 (1992).

Dejarlais contends that Shupe's testimony that he did have sexual intercourse with her twice without her consent was insufficient to prove that there was "sexual intercourse" as defined by statute because she did not specify that penetration occurred. "A person is guilty of rape in the third degree when . . . such person engages in sexual intercourse with another person . . . (a) Where the victim did not consent . . . ." RCW 9A.44.060(1). " 'Sexual intercourse' (a) has its ordinary meaning and occurs upon any penetration, however slight . . . ." RCW 9A.44.010(1). Thus, the ordinary meaning of "sexual intercourse" includes the fact of penetration. A reasonable jury could

---

[1]Dejarlais also argues that the trial court erred by denying his motion to dismiss based on lack of evidence, which he made at the close of the State's case, but did not renew after the defense presented its case. As the State points out, Dejarlais has waived this argument. The rule is:

A defendant waives a challenge to the sufficiency of the evidence at the close of the State's case if he introduces evidence, on his behalf, unless the evidence has no bearing on the merits of the case. A defendant can, however, always seek appellate review of the sufficiency of the evidence as a whole to support a criminal conviction.

*State v. Young*, 50 Wn. App. 107, 111, 747 P.2d 486 (1987) (citations omitted). *See also State v. Jackson*, 82 Wn. App. 594, 607-09, 918 P.2d 945 (1996), *review denied*, 131 Wn.2d 1006 (1997).

conclude beyond a reasonable doubt that when Shupe testified that "sexual intercourse" occurred, she meant that penetration occurred. There was no error.

We affirm.

HOUGHTON, C.J., and MORGAN, J., concur.

Review granted at 134 Wn.2d 1024 (1998).