969 P.2d 90 (1998)
136 Wash.2d 939
The STATE of Washington, Respondent,
v.
Steven Daniel DEJARLAIS, Petitioner.
No. 66213-4.
Supreme Court of Washington, En Banc.
Argued September 23, 1998.
Decided December 24, 1998.
Linda J. King, Tacoma, for Petitioner.
John Ladenburg, Pierce County Prosecutor, Kathleen Proctor, Pierce County Deputy Pros. Atty, Tacoma, for Respondent.
DOLLIVER, Justice.
Defendant Steven Dejarlais was convicted in Pierce County Superior Court of violating a domestic violence order for protection. The charge arose six months after issuance and service of the order, following a visit by the Defendant to the home of his girl friend, Kimberly Shupe, who had petitioned for the order. Defendant was also convicted of rape in the third degree for engaging in sexual intercourse with Ms. Shupe on two occasions, over her objections, that same night. At trial, the court declined to give defense counsel's proposed instruction, which would have told the jury a person is not guilty of violating a protection order if the person protected by that order expressly invited or solicited the defendant's presence. The Court of Appeals affirmed the Defendant's convictions, and we granted his petition for review. We now affirm.
Ms. Shupe met the Defendant in 1993 after separating from her husband. She filed for divorce in June 1993 and began seeing the Defendant regularly. Their relationship included his frequent overnight stays at her home. Ms. Shupe testified that, during divorce proceedings with her husband, a temporary parenting plan was filed, and she feared being found in contempt of its terms due to her relationship with the Defendant. She further testified her husband gave her $1,500 to help her move, and requested *91 she petition for an order for protection against the Defendant to avoid being found in contempt of the parenting plan.
On September 9, 1993, Ms. Shupe signed a declaration in support of the request for a protection order, claiming she was a victim of Defendant's harassment. She stated:
I met Steve back in February 1993. I'm married but going through a divorce. I decided to stop seeing him because it was becoming to [sic] much. He & my husband has got [sic] into it a few times also. Steve follows me, calls numerous times a day, calls my work, comes to my work. He just don't [sic] get the hint its [sic] over.
Ex. 9.
On September 23, 1993, an Order for Protection from Civil Harassment was entered. It restrained the Defendant from contacting or attempting to contact Ms. Shupe in any manner, making any attempts to keep her under surveillance, and going within "100 feet" of her residence and workplace. Ex. 1. The order stated it was to remain in effect until September 23, 1994, and that any willful disobedience of its provisions would subject the Defendant to criminal penalties as well as contempt proceedings. Fife Police Officer Stephen Mauer served the Defendant with the order on November 23, 1993. Ms. Shupe testified her relationship with the Defendant continued despite the order.
The Defendant went to jail in May 1994, apparently for an offense unrelated to his relationship with Ms. Shupe. During that time, Ms. Shupe discovered he had been seeing another woman. Following his stay in jail, on May 22, 1994, the Defendant went to Ms. Shupe's home and let himself in through an unlocked door. Ms. Shupe, who had been asleep on the floor by the couch, confronted the Defendant, telling him she knew about the other woman and wanted nothing more to do with him. She did not tell him to leave, fearing he would get "mad and furious," but walked back to her bedroom. The Defendant followed her, saying he would "have [her] one more time." Verbatim Report of Proceedings at 40. He threw her on the bed, and, disregarding her protestations and refusals, had intercourse with her twice.
The Defendant was arrested and charged with one count of violation of a protection order and one count of rape in the second degree. At trial, the Defendant testified he was aware of the protection order and clearly understood its terms. He testified he did not rape Ms. Shupe but that the two of them had consensual sex.
The trial court declined to give defense counsel's proposed instruction, which stated:
If the person protected by a Protection Order expressly invited or solicited the presence of the defendant, then the defendant is not guilty of Violation of Protection Order.
Clerk's Papers at 44. Instead, the trial court instructed the jury as follows:
A person commits the crime of violation of a[n] order for protection when that person knowingly violates the terms of an order for protection.
Clerk's Papers at 68.
The jury found the Defendant guilty of violation of a protection order and rape in the third degree. The Court of Appeals affirmed his convictions. We granted review and now affirm, holding consent is not a defense to the charge of violating a domestic violence order for protection.
The Defendant was convicted of a misdemeanor violation of a protection order under RCW 26.50.110(1), which provides:
Whenever an order for protection is granted under this chapter and the respondent or person to be restrained knows of the order, a violation of the restraint provisions or of a provision excluding the person from a residence, workplace, school, or day care is a gross misdemeanor....
The Defendant contends that, where a person protected by an order consents to the presence of the person restrained by the order, the jury should be instructed that consent is a defense to the charge of violating that order. We note at the outset that, even if consent were a defense to the crime of violating a protection order, it is far from clear that the contact in this case was consensual. Contrary to the Defendant's proposed instruction, Ms. Shupe does not appear *92 to have invited or solicited the Defendant's presence on the night in question. More importantly, the jury found Defendant guilty of rape in the third degree, by definition nonconsensual contact. See RCW 9A.44.060(1)(a). The protection order prohibited any contact; even if Ms. Shupe consented to earlier contacts or to Defendant's presence at her home that day, the rape was clearly a nonconsensual contact. We nevertheless reach the issue Defendant raises because he seems to suggest that Ms. Shupe's repeated invitations and ongoing acquiescence to Defendant's presence constituted a blanket consent or waiver of the order's terms. We disagree.
The statutory elements of the crime of violation of a protection order do not address consent. Nor did the Legislature affirmatively establish consent as a defense elsewhere in RCW 26.50. The Defendant relies on Reed v. Reed, 149 Wash. 352, 270 P. 1028 (1928), a case which the Court of Appeals properly distinguished in affirming Defendant's conviction.
The Court of Appeals correctly held Reed inapplicable. Reed relied on the notion that a protection order is merely a private right of enforcement that may be waived by the victim. The Court of Appeals noted, however, that in Reed, no other private or public interest was involved. State v. Dejarlais, 88 Wash.App. 297, 304, 944 P.2d 1110 (1997). A domestic violence protection order issued under RCW 26.50, on the other hand, does not protect merely the "private right" of the person named as petitioner in the order. In fact, the court recognized, the statute reflects the Legislature's belief that the public has an interest in preventing domestic violence:
The Legislature has clearly indicated that there is a public interest in domestic violence protection orders. In its statement of intent for RCW 26.50, the Legislature stated that domestic violence, including violations of protective orders, is expressly a public, as well as private, problem, stating that:
Domestic violence is a problem of immense proportions affecting individuals as well as communities. Domestic violence has long been recognized as being at the core of other major social problems: Child abuse, other crimes of violence against person or property, juvenile delinquency, and alcohol and drug abuse. Domestic violence costs millions of dollars each year in the state of Washington for health care, absence from work, services to children, and more.
Laws of 1992, ch. 111, sec. 1. Thus, Reed is distinguishable and Dejarlais's argument fails.
Dejarlais, 88 Wash.App. at 304, 944 P.2d 1110.
We agree. Indeed, the Legislature's intent is clear throughout the statute, and allowing consent as a defense is not only inconsistent with, but would undermine, that intent. RCW 26.50.035(1)(c) states:
The order for protection form shall include, in a conspicuous location, notice of criminal penalties resulting from violation of the order, and the following statement: "You can be arrested even if the person or persons who obtained the order invite or allow you to violate the order's prohibitions. The respondent has the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order upon written application."

(Emphasis added). The "form" described above is to be used for all petitions filed and orders issued under RCW 26.50 after September 1, 1994. RCW 26.50.035(1)(a). Because the order in this case was issued in September 1993, that provision was not yet in effect; the order served on the Defendant warned him only that any willful disobedience of the order's provisions would subject the respondent to criminal penalties and possibly contempt. Nevertheless, we are convinced the quoted subsection shows the Legislature did not intend for consent to be a defense to violating a domestic violence protection order.
The statute also requires police to make an arrest when they have probable cause to believe a person has violated a protection order. RCW 26.50.110(2). There is no exception *93 to this mandate for consensual contacts; rather, the obligation to arrest does not even depend upon a complaint being made by the person protected under the order but only on the respondent's awareness of the existence of that order. We also note RCW 10.99.030 requires officers to make an arrest whenever they have probable cause to believe someone is guilty of any crime of domestic violence, including violation of a protection order. That chapter states the Legislature "recognize[s] the importance of domestic violence as a serious crime against society" and intends "that criminal laws be enforced without regard to whether the persons involved are or were married, cohabiting, or involved in a relationship." RCW 10.99.010.
Moreover, the act states modification of a protection order requires notice to all parties and a hearing. RCW 26.50.130. Allowing consent as a defense to violating a protection order would result in a de facto modification.
The Defendant argues such an interpretation discourages reconciliation. However, we note nothing in the statute prevents drafting a protection order which allows some contact, for instance, by telephone or through a third party. There is no requirement that all contact be prohibited. And, while modification of an order is only possible after notice and hearing, it can be accomplished any time up to the order's expiration date. RCW 26.50.130.
Our reading of the statute is consistent with the Legislature's intent and clear statement of policy. Requests for modification of that policy should be directed to the Legislature not this court. State v. Givens, 74 Wash.2d 48, 49, 442 P.2d 628 (1968). The statute, when read as a whole, makes clear that consent should not be a defense to violating a domestic violence protection order. The Defendant is not entitled to an instruction which inaccurately represents the law. The Court of Appeals correctly held Reed, a case decided long before passage of RCW 26.50, is inapplicable. We affirm the Defendant's convictions.
DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.