IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37106-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JUAN ANTONIO ACEVEDO-GIRON, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — We must decide whether sufficient evidence supports jury findings that, on two occasions, Juan Acevedo-Giron touched a young girl in an intimate part for the purpose of sexual gratification. We hold that, after viewing the evidence in a light favorable to the State, sufficient evidence supports the jury findings. We affirm Juan Acevedo-Giron's convictions for two counts of child molestation in the first degree.

FACTS

We procure the facts primarily from trial testimony. Because Juan Acevedo-Giron challenges only two of his six convictions, we concentrate on facts that form the basis for the challenged charges, two counts of first degree child molestation. Because Acevedo-Giron challenges the sufficiency of evidence, we draw the facts in favor of the State. We principally rely on the testimony of the victim, Darby, a pseudonym.

Darby is the daughter of Natalia Cipriano.  Juan Acevedo-Giron and Cipriano experienced a romantic relationship.  Darby testified that Juan Acevedo-Giron touched her inappropriately on numerous occasions.  She could not recall the number of times, the dates of most occurrences, and the details of most incidents.

We know that the first occasion of molestation transpired on August 17, 2012, because Natalia Cipriano gave birth to a fifth child in the hospital that day.  Cipriano's other four children stayed with Juan Acevedo-Giron, then eighteen-years of age, at his sister's residence in Yakima.  Darby, then eight years old, initially slept on the main floor living room that night, while her two brothers slept on the floor in Acevedo-Giron's basement room and her sister slept on the bed in Acevedo-Giron's room.  Darby awoke to Acevedo-Giron carrying her downstairs.  Darby asked Acevedo-Giron why he carried her downstairs, and he answered that her mother wanted her children to sleep in the basement.

On arriving in the basement, Darby lay on the bed between her sister and Juan Acevedo-Giron.  Acevedo-Giron began touching Darby.  He first touched her back.  He then tried to touch Darby's private area by putting his hand down the front of her pants.  Darby told him no.  Acevedo-Giron responded by insisting to Darby that she would enjoy the touching at a later age.  Acevedo-Giron directed her to select a spot on her body for him to touch and told her he would only touch that area.  Darby asked Acevedo-Giron

whether, if she chose a location on her body, he would later touch her there again. Acevedo-Giron answered no.

During that night on the bed, Juan Acevedo-Giron also attempted to kiss Darby, to which attempt she responded no. Darby smelled alcohol on Acevedo-Giron's breath. Darby excused herself to go to the restroom. She then went upstairs and cried.

The precise testimony of Darby looms important to Juan Acevedo-Giron's assignments of error so we quote some of the critical testimony.

> Q. Can you tell us what happened that night [August 17, 2012].
> A. . . . So my two brothers slept on the ground and I slept between him and my sister, and he started touching on me.
> Q. Did he say anything to you?
> A. He told me to choose a spot for him and he would only touch that spot. He was trying to touch my private area. I told him no. He said that I would like it when I was older.
> . . . .
> Q. Can you tell us where he touched you?
> A. It was like my back and he tried putting his hand down the front of my pants. I told him no. He told me, just pick a spot. I told him, if I did, would he do it again? He said no. He said he wouldn't. I said okay. I told him—he told me, you can grab the back of me. So I did. He tried kissing on me. I said, no. Then I said I needed to go to the bathroom. So I went upstairs and I cried.

Report of Proceedings (RP) at 239-40. On cross-examination, Darby added:

> Q. Okay. You said that Juan got into bed with you and he began touching you.
> A. Yes.
> Q. Okay. Did he try to kiss you?
> A. Yes.

RP at 266.

3

On another occasion, while her mother resided in jail, nine-year-old Darby and her siblings resided with Juan Acevedo-Giron in his sister's home. Darby climbed onto a shelf to retrieve a pack of breath mints. While on the shelf, Acevedo-Giron grabbed her buttocks from behind. Darby turned around. Acevedo-Giron instructed her to retrieve a pipe from a vehicle. Darby obliged, but paused in the car to cry.

### PROCEDURE

The State of Washington charged Juan Acevedo-Giron in a fourth amended information of six counts: (1) attempted indecent liberties, (2) assault in the second degree with a sexual motivation, (3) felony harassment of another, threat to kill, with a sexual motivation, (4) child molestation in the first degree for the touching on August 17, 2012, (5) child molestation in the first degree for the grabbing of the buttocks a year later, and (6) one count of rape of a child in the second degree. The victim of each crime was Darby.

The jury found Juan Acevedo-Giron guilty of the two counts of child molestation in the first degree and one count of felony harassment with sexual motivation. The trial court declared a mistrial as to the remaining three charges, due to the lack of jury unanimity.

4

LAW AND ANALYSIS

To repeat, Juan Acevedo-Giron challenges the sufficiency of evidence for his two convictions of child molestation in the first degree. We first review principles of sufficiency of evidence challenges and rules attended to the application of the statute prohibiting child molestation. We thereafter analyze separately the two instances of charged molestation to determine the sufficiency of evidence of each conviction.

Evidence supports a conviction if, after viewing all of the evidence in the light most favorable to the State, any rational juror could have found the elements of the crime proved beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). By asserting insufficient evidence, the defendant admits the truth of the State's evidence and all inferences reasonably drawn therefrom. *State v. Tilton*, 149 Wn.2d 775, 786 (2003). Circumstantial evidence and direct evidence are equally reliable. *State v. Dejarlais*, 88 Wn. App. 297, 305, 944 P.2d 1110 (1997), *aff'd*, 136 Wn.2d 939, 969 P,2d 90 (1998). The existence of a fact cannot rest in guess, speculation, or conjecture. *State v. Zamora*, 6 Wn. App. 130, 133, 491 P.2d 1342 (1971). Credibility determinations are for the trier of fact and cannot be reviewed on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

RCW 9A.44.083(1) defines the offense of child molestation in the first degree. The statute declares:

A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, *sexual contact* with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

(Emphasis added.)  Acevedo-Giron does not challenge the age elements of the crime. Instead, he argues the testimony did not support any finding as to each allegation that he engaged in sexual contact.  "Sexual contact" for purposes of sex offenses is defined under RCW 9A.44.010(2):

"Sexual contact" means any touching of the *sexual or other intimate parts* of a person done for the *purpose of gratifying sexual desire* of either party or a third party.

(Emphasis added.)  In determining whether sexual contact occurred, we look to the totality of the facts and circumstances presented. *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009).

Although courts sometimes conflate the two elements of sexual contact, the discrete elements are: (1) touching of a sexual or other intimate body part, and (2) touching for the purpose of sexual gratification.  As to the first element, if a contact is directly to the genital organs or breasts, the court on appeal may resolve the question as a matter of law. *In re Welfare of Adams*, 24 Wn. App. 517, 519, 601 P.2d 995 (1979). Nevertheless, the State, to convict, need not establish the accused's touching of an erogenous part such as the vagina, penis, or breast.  RCW 9A.44.010(2) mentions both sexual parts and intimate parts.  The term "intimate parts" is broader in connotation than

6

the term "sexual parts." *In re Welfare of Adams*, 24 Wn. App. 517, 519 (1979). Contact is "intimate" within the meaning of the statute if a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper. *State v. Jackson*, 145 Wn. App. 814, 819, 187 P.3d 321 (2008). Whether an area other than genitalia and breasts are intimate is a question to be resolved by the trier of the facts. *State v. Jackson*, 145 Wn. App. at 819; *In re Welfare of Adams*, 24 Wn. App. 517, 520 (1979).

A jury may determine that parts of the body in close proximity to the primary erogenous areas are intimate parts. *State v. Harstad*, 153 Wn. App. 10, 21 (2009); *In re Welfare of Adams*, 24 Wn. App. 517, 521 (1979). For example, the touching of upper inner thighs satisfies the element of intimate parts. *State v. Harstad*, 153 Wn. App. at 21. The hips, assuming the hips to be separate from inner thighs, are also a sufficiently intimate part of the anatomy that a person of common intelligence has fair notice that the nonconsensual touching of them is prohibited. *State v. Harstad*, 153 Wn. App. at 22. Touching the victim's underwear constitutes evidence of the touching of an intimate part even if the accused does not place his hand underneath the clothing. *State v. Harstad*, 153 Wn. App. 10, 22 (2009). Buttocks are an intimate area of the body. *In re Welfare of Adams*, 24 Wn. App. 517, 519 (1979).

The New Hampshire Supreme Court construing a statute similarly worded to RCW 9A.44.010(2) held that an "intimate part" means any part of the body the touching

7

of which offends an objectively reasonable sense of personal dignity, privacy, and modesty. *State v. Bakunczyk*, 164 N.H. 77, 53 A.3d 569, 571 (2012). One New York appellate court held that the neck could qualify as an "intimate part" because one, under societal norms, does not generally touch another's neck in the absence of a close relationship between the parties. *People v. Sene*, 66 A.D.3d 427, 887 N.Y.S.2d 8, 9 (2009). The same court observed that, because intimacy is a function of behavior and not merely anatomy, the manner and circumstances of the touching should also be considered despite the accused's argument that to do so would conflate the sexual gratification element with the issue of whether a body part is an intimate part. *People v. Sene*, 887 N.Y.S.2d 8, 9 (App. Div. 2009). In two reported decisions, an appellate court ruled that a kiss on the mouth could be the touching of an intimate part. *Fort Peck Tribes v. Nation*, 11 Am. Tribal L. Rptr. 255 (Fort Peck Ct. App. 2010); *People v. Rondon*, 152 Misc. 2d 1018, 1020, 579 N.Y.S.2d 319, 320 (Crim. Ct. 1992).

A discussion of *State v. Harstad*, 153 Wn. App. 10 (2009) assists in resolving Juan Acevedo-Giron's appeal. In *Harstad*, the victim testified that Ronald Harstad touched her at night when all others in the home slept and that she slept wearing only a T-shirt and underwear. The victim alternatively testified that Harstad touched her "private place," which she defined as the part that is covered by her underpants, and that Harstad touched "right by" her private place. The victim drew a hand on a body sketch's upper inner thigh to demonstrate where she had been touched. The victim added that Harstad

8

rubbed his penis at the time he touched her. In response to a vagueness challenge to the definition of "sexual contact," the court concluded that a person of common intelligence could be expected to know that the upper inner thigh, which puts the defendant's hand in closer proximity to a primary erogenous zone than touching the hip does, was an intimate part. The court also ruled that touching of the victim's underwear established the touching of an intimate bodily part.

In addition to showing contact of an intimate area, the State must show sexual gratification as part of its burden to prove sexual contact. *State v. Stevens*, 158 Wn.2d 304, 309-10, 143 P.3d 817 (2006). Proof that an unrelated adult with no caretaking function touched the intimate parts of a child supports the inference the touching was for the purpose of sexual gratification, although we require additional proof of sexual purpose when clothes cover the intimate part touched. *State v. Harstad*, 153 Wn. App. 10, 21 (2009); *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991). "Caretaking function" within the meaning of this rule means caretaking that requires close contact with a child's intimate parts. *State v. Harstad*, 153 Wn. App. 10, 21 (2009). Juan Acevedo-Giron does not argue he undertook a caretaking function. In *State v. Harstad*, the court found sufficient evidence of touching for sexual gratification based on evidence that, when Robert Harstad touched the victim's inner thighs, he rubbed his penis, he asked the victim to see the girl's genitals, and he breathed heavily.

We separate the two incidents that give rise to the two convictions and ask, as to each incident, whether the State presented sufficient evidence to support a finding of guilt for each of the two major elements of the crime of first degree child molestation. Juan Acevedo-Giron argues that, as to the count of child molestation occurring on August 17, 2012, the State failed to satisfy its burden of proving that he touched an intimate bodily part of Darby. Acevedo-Giron claims that Darby never testified to his contact with an intimate part. He emphasizes that Darby stated that he "tried" putting his hand down her pants. Darby did not testify he placed his hand inside her pants.

The evidence in this appeal may be weaker than the evidence presented by the State in *State v. Harstad*. Nevertheless, when drawing reasonable inferences from the testimony of Darby, we conclude the State presented sufficient evidence of touching an intimate part. During her testimony, Darby first commented that Juan Acevedo-Giron began touching her. She then averred that Acevedo-Giron attempted to touch her private area. He later touched her back while trying to put his hand down the front of her pants. The back alone could be an intimate area under this circumstances with which Acevedo-Giron touched Darby. We also agree with the State that a grown man could not touch an eight-year-old, while trying to place his hand inside her pants, without touching an intimate area.

The evidence grows stronger with regard to the second element of child molestation as to the August 17, 2012 charge. Thus, we also conclude that sufficient

10

facts supported a jury finding that Juan Acevedo-Giron touched Darby on that date for the purpose of sexual gratification. He tried to place his hands inside the young girl's pants. He told her she would enjoy the touching when she matured. He attempted to kiss her.

We now move to the second conviction that entailed the grabbing of the buttocks while Darby stood on a shelf. We readily find that sufficient evidence supports a jury finding that Juan Acevedo-Giron touched an intimate part of Darby's body since the buttocks are typically considered to be an intimate area of human anatomy. Because of Acevedo-Giron's earlier sexual contact with Darby, Darby quickly turned around. She was scared. The touching served no other purpose than sexual gratification.

Juan Acevedo-Giron forwards *State v. Powell*, 62 Wn. App. 914 (1992) as supporting his contention that insufficient evidence supported the second, if not both, convictions. Harry Powell allegedly molested Windy, a child. On one occasion, Powell hugged Windy around her chest. On another occasion, as he helped her off of his lap, he placed his hand on the backside of her underwear underneath her skirt. On a separate occasion, Powell touched Windy's thighs in his truck. On each occasion, Powell touched the outside of Windy's clothes. This court held that the evidence did not support the sexual gratification element. When he touched the underwear, Windy said "'Hey. Stop it.'" The touching was fleeting. He immediately responded: "'Oops'" and stopped. *State v. Powell*, 62 Wn. App. at 918. He issued no threats or bribes.

11

Unlike Harry Powell's touchings in *State v. Powell*, Juan Acevedo-Giron's grab of the buttocks was purposeful. Darby reacted to being grabbed by crying. She described feeling shocked and scared. Acevedo-Giron's prior sexual contact with Darby supports the inference that this subsequent, intimate contact was done to satisfy his sexual desire. Grabbing Darby's buttocks cannot be innocently explained.

STATEMENT OF ADDITIONAL GROUNDS

Juan Acevedo-Giron presents five challenges in a statement of additional grounds. We reject each challenge.

First, Juan Acevedo-Giron highlights that Darby testified that she smelled alcohol on his breath when he allegedly touched her in bed as charged in count 4. He disputes that an eight-year-old child would know the smell of alcohol. Acevedo-Giron's argument challenges the credibility of a witness, which this court does not review. *State v. Camarillo*, 115 Wn.2d 60, 71 (1990).

Second, Juan Acevedo-Giron notes that Darby alleged that he molested her the night Natalia Cipriano gave birth in the hospital. Acevedo-Giron claims that he was with Cipriano at the hospital that night and thus could not have molested Darby. Nevertheless, no one testified that Acevedo-Giron spent the night at the hospital. Further, because Acevedo-Giron challenges the sufficiency of evidence, he admits the truth of the State's evidence, including Darby's testimony, and all reasonable inferences drawn from it. *State v. Tilton*, 149 Wn.2d 775, 786 (2003).

12

Third, Juan Acevedo-Giron alleges that the State violated his discovery rights because he received discovery two months before trial. Presumably, Acevedo-Giron believes he should have received the State's discovery earlier.

RAP 2.5(a) governs issues initially raise on appeal, and states, in relevant part:

> The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.

Juan Acevedo-Giron should have raised any discovery violations at the trial court level. The record does not support any conclusion that the State failed to follow discovery rules.

Fourth, Juan Acevedo-Giron alleges that the State violated his right to a speedy trial. He provides no analysis, however, to support his contention.

Fifth, Juan Acevedo-Giron claims that the prosecutor threatened to add three additional charges if he refused to take an offer. Acevedo-Giron alleges that, after refusing her offer, the prosecutor added additional charges, as promised. Even assuming any such threat to be improper, the record does not support Acevedo-Giron's factual allegation. When a claim is brought on appeal, this court will not consider matters outside the trial record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

## CONCLUSION

We affirm both convictions of Juan Acevedo-Giron for child molestation in the first degree convictions.

No. 37106-9-III
*State v. Acevedo-Giron*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:


_____
Siddoway, A.C.J.


_____
Staab, J.