IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,602

STATE OF KANSAS,
*Appellee*,

v.

SAMUEL CHAVEZ,
*Appellant.*

SYLLABUS BY THE COURT

1.

K.S.A. 2018 Supp. 21-5202 creates three categories of criminal intent by describing culpable mental states, classified according to relative degrees, from highest to lowest, as follows: (1) intentionally; (2) knowingly; and (3) recklessly. But K.S.A. 2018 Supp. 21-5202(c) establishes the legal possibility that the State can prove the culpability required for the charged crime by proving a higher degree of culpability, e.g., if recklessness suffices to establish an element of the charged crime, that element is established by proof the person acted knowingly or intentionally.

2.

Because K.S.A. 2018 Supp. 21-5202(c) permits recklessness to be proved by establishing the defendant acted knowingly, the presumption under K.S.A. 2018 Supp. 21-5427(c)—that a person who violates a protective order after having been served with the order acts knowingly—is not internally inconsistent with the recklessness element of stalking under K.S.A. 2018 Supp. 21-5427(a)(3).

1

3.

A protected person under a Protection from Abuse court order (PFA order) does not have the authority to unilaterally modify the court order by waiving its restraints or consenting to its violation. Consequently, in a stalking prosecution under K.S.A. 2018 Supp. 21-5427(a)(3), the defendant is not entitled to have the jury instructed on the principles of an implied waiver.

4.

Pursuant to K.S.A. 2018 Supp. 22-3414(3), a defendant challenging the omission of an unrequested jury instruction has the burden to establish that the instruction error was clearly erroneous. Reversibility based upon the omission of an unrequested jury instruction is subject to unlimited review on appeal, based on the entire record. To reverse on the omission of an unrequested jury instruction, an appellate court must be firmly convinced that the omission adversely affected the jury's verdict.

5.

Cumulative trial errors, when considered collectively, may require reversal of the defendant's conviction when the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 4, 2017. Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed August 23, 2019. Judgment of the Court of Appeals affirming in part, reversing in part, and vacating in part the district court is affirmed. Judgment of the district court is affirmed in part, reversed in part, and vacated in part.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Daniel G. Obermeier*, assistant district attorney, argued the cause, and *Edward J. Bain*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

JOHNSON, J.:  A jury convicted Samuel Chavez of aggravated burglary, stalking, and criminal threat. On direct appeal, the Court of Appeals reversed Chavez' aggravated burglary conviction but affirmed his stalking and criminal threat convictions. Chavez petitioned this court for review and argues that the Court of Appeals erred in: (1) rejecting his argument that the stalking conviction was legally impossible under Kansas statutes; (2) failing to address his claim that he was entitled to an instruction and argument regarding a defense that the victim waived her right to enforce a protection from abuse order; (3) holding that a limiting instruction is not legally appropriate if prior crimes or civil wrongs evidence is admitted to prove an actual element of the charged crime; and (4) refusing to grant him a new trial due to cumulative error. On the issues before this court, we find no reversible error and affirm the Court of Appeals' decision to affirm the stalking and criminal threat convictions.

FACTUAL AND PROCEDURAL OVERVIEW

The State charged Chavez with multiple crimes stemming from events that allegedly took place between Chavez and his estranged wife, Sandra Jaimes-Martinez (hereinafter Jaimes), on August 31, 2014 and September 1, 2014. The State alleged that on August 31, Chavez committed aggravated burglary, aggravated assault, stalking, domestic battery, and criminal damage to property; and that on September 1, Chavez committed aggravated burglary, stalking, and criminal threat. Chavez' case proceeded to a jury trial on all charges, but Chavez was only convicted of the crimes that the State alleged occurred on September 1, 2014.

3

At Chavez' jury trial, Jaimes testified that she and Chavez lived together at a particular residence from 2009 to March 2014, when their relationship ended and Chavez moved out. The couple had a child together.

In July 2014, Jaimes obtained a "Final Order of Protection from Abuse" (PFA) listing Jaimes as the plaintiff and Chavez as the defendant. The district judge initialed the order indicating that "[t]he matter was heard and submitted to the court which finds that Plaintiff has proved the allegations of abuse by the preponderance of the evidence as required by K.S.A. 60-3107." The PFA granted Jaimes exclusive possession of the particular residence. The PFA further provided "[t]he defendant shall not contact the protected person(s), either directly or indirectly, except as authorized by the court in paragraph 8(b) of this order." In paragraph 8(b), the district court granted Jaimes sole temporary legal custody of the couple's child. The PFA was effective until July 16, 2015, and stated "ONLY THE COURT CAN CHANGE THIS ORDER."

Jaimes and Chavez related different accounts of their relationship following Chavez' receipt of the PFA. According to Jaimes, between July and September 2014, Chavez was not allowed at her home. But Chavez would frequently text and call her. Jaimes said she was scared of Chavez, but she answered some of his calls because he had previously left her voicemails threatening to come home if she did not answer.

On August 31, 2014, Jaimes said Chavez arrived uninvited at her house and beat her, threw a beer bottle at her, pushed her onto the sofa, held her down, retrieved some children's scissors, and threatened to kill her. Jaimes eventually got away from Chavez and called the police. By that time, Chavez was leaving. As he left, he knocked over a television sitting on the porch.

4

Chavez came back uninvited the next day, knocked strongly on the door, and told Jaimes to open it or he would kill her. Chavez eventually forced the door open but left because Jaimes was on the phone with the police.

According to Chavez, he knew about the PFA and therefore knew he should not have been communicating with Jaimes. But despite the PFA and troubles in their relationship, he and Jaimes were in regular contact and planned to get back together. Chavez presented text messages as evidence of consensual communication.

Chavez denied Jaimes' version of events leading to the criminal charges against him. With respect to September 1, Chavez said that during a phone conversation, Jaimes agreed to lend Chavez some money and told Chavez to come to her house to get it. When he arrived, he knocked and Jaimes opened the door. Jaimes said she would give him the money if she could have his cell phone to erase text messages and phone calls she made to him. After he refused, Jaimes tried to close the door. Chavez pushed the door with his arm to keep it from closing, which broke the chain on the door. Jaimes then called the police and Chavez left.

The district court granted Chavez' request for a directed verdict on the August 31 criminal damage to property charge, and the jury acquitted Chavez on the remaining August 31 charges. For his convictions on the September 1 charges, the district court sentenced Chavez to 41 months for aggravated burglary, 6 months for stalking, and 6 months for criminal threat, to run concurrent to each other.

The Court of Appeals reversed Chavez' aggravated burglary conviction. *State v. Chavez*, No. 115,602, 2017 WL 3321375, at *4-6 (Kan. App. 2017) (unpublished opinion). The panel affirmed the remainder of Chavez' convictions, rejecting his argument that his stalking conviction required the State to prove legally impossible mental states. 2017 WL 3321375, at *7-8. The panel further held that Chavez was not

5

entitled to a K.S.A. 60-455 limiting instruction regarding the PFA because existence of the PFA was an element of the stalking charge. 2017 WL 3321375, at *8-9. The panel did not address Chavez' claim that he was entitled to an instruction on implied waiver of a PFA before it rejected Chavez' cumulative error argument. 2017 WL 3321375, at *9.

Chavez petitioned this court for review of the rulings adverse to him. The State did not cross-petition on the Court of Appeals' reversal of the aggravated burglary conviction.

STALKING UNDER K.S.A. 2018 SUPP. 21-5427(a)(3)

*Preservation*

Chavez was charged with stalking under K.S.A. 2018 Supp. 21-5427(a)(3). For the first time on appeal, Chavez asserted that K.S.A. 2018 Supp. 21-5427 is internally inconsistent because subsection (a)(3) requires proof of reckless conduct while subsection (c) creates a presumption the defendant's conduct was knowing. Consequently, he contended that when the State charges and presents evidence that a person committed stalking after being served with a protective order, it has the statutory burden to prove the defendant acted recklessly at the same time he or she is presumed to be acting knowingly, which he labels as a legal impossibility.

Chavez ultimately argued to the Court of Appeals that his stalking conviction had to be reversed for insufficient evidence. Specifically, he pointed out that the State did not—and could not—present sufficient evidence that Chavez simultaneously acted recklessly and acted knowingly. But the panel reframed the issue as being a challenge to the charging document. 2017 WL 3321375, at *2-3. We decline to follow that path; we will address Chavez' sufficiency of the evidence issue, which is not constrained by a preservation requirement. See *State v. Farmer*, 285 Kan. 541, 545, 175 P.3d 221 (2008)

6

("There is no requirement that a criminal defendant challenge the sufficiency of the evidence before the trial court in order to preserve it for appeal.").

*Standard of Review*

Chavez' sufficiency of the evidence challenge is predicated on interpretation of the stalking and culpable mental states statutes. Statutory interpretation is a question of law over which this court has unlimited review. *State v. Ward*, 307 Kan. 245, 251, 408 P.3d 954 (2018). Once we have interpreted these statutes, the remaining question is whether the State presented sufficient evidence to support Chavez' stalking conviction under our interpretation. See 307 Kan. at 251, 259-60. "'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016).

*Analysis*

Chavez was charged with stalking under K.S.A. 2018 Supp. 21-5427(a)(3). While subsection (a)(3) is the focus of Chavez' argument, it is helpful to review all of subsection (a), along with subsection (c), to understand the culpable mental states at issue in the stalking statute:

> "(a) Stalking is:
>
> (1) Recklessly engaging in a course of conduct targeted at a specific person which would cause a reasonable person in the circumstances of the targeted person to fear for such person's safety, or the safety of a member of such person's immediate family and the targeted person is actually placed in such fear;

7

(2) engaging in a course of conduct targeted at a specific person with knowledge that the course of conduct will place the targeted person in fear for such person's safety or the safety of a member of such person's immediate family; or

(3) after being served with, or otherwise provided notice of, any protective order included in K.S.A. 21-3843, prior to its repeal or K.S.A. 2018 Supp. 21-5924, and amendments thereto, that prohibits contact with a targeted person, *recklessly* engaging *in at least one act listed in subsection (f)(1)* that violates the provisions of the order and would cause a reasonable person to fear for such person's safety, or the safety of a member of such person's immediate family and the targeted person is actually placed in such fear.

. . . .

"(c) For the purposes of this section, *a person served with a protective order* as defined by K.S.A. 21-3843, prior to its repeal or K.S.A. 2018 Supp. 21-5924, and amendments thereto, or a person who engaged in acts which would constitute stalking, after having been advised by a law enforcement officer, that such person's actions were in violation of this section, *shall be presumed to have acted knowingly as to any like future act targeted at the specific person or persons named in the order* or as advised by the officer." (Emphases added.) K.S.A. 2018 Supp. 21-5427.

Subsection (f)(1) goes on to define "course of conduct," in relevant part as "two or more acts over a period of time, however short, which evidence a continuity of purpose." K.S.A. 2018 Supp. 21-5427(f)(1). Subsection (f)(1) also provides a nonexclusive list of such acts. Relevant here, the State relied upon an act set out in subsection (f)(1)(B), ". . . confronting the targeted person . . . ." K.S.A. 2018 Supp. 21-5427(f)(1)(B).

First time offenders under subsections (a)(1) and (a)(2), whether the stalking conduct was reckless or knowing, are charged with a Class A person misdemeanor. K.S.A. 2018 Supp. 21-5427(b)(1)-(2). But even first time offenders of subsection (a)(3) are charged with a felony. K.S.A. 2018 Supp. 21-5427(b)(3).

Important to the issue at hand, subsection (c) provides that a person served with a protective order shall be presumed to have acted knowingly as to any like future acts targeted at the specific person or persons named in the order. In addition to proving a violation of a protective order, subsection (a)(3) requires the State to prove that the prohibited contact would cause a reasonable person to fear for such person's safety or immediate family member's safety and that the targeted person is actually placed in such fear.

Chavez contends that subsection (a)(3) applies to a person who, after having been served with a PFA, commits one or more *reckless* acts. Yet, K.S.A. 2018 Supp. 21-5427(c) clearly states that a person committing a stalking act after having been served with a PFA is acting *knowingly*. He then points to our opinion in *State v. O'Rear*, 293 Kan. 892, 270 P.3d 1127 (2012), as establishing that reckless conduct and knowing conduct are mutually exclusive, so that it is legally impossible for the State to prove a presumptively knowing act was done recklessly. But Chavez fails to acknowledge that the alleged crime at issue in *O'Rear* took place before the 2011 recodification of the Kansas criminal code, which included a new culpable mental state paradigm that undermines Chavez' legal impossibility argument.

O'Rear was convicted of reckless aggravated battery. At the time O'Rear shot the victim, K.S.A. 21-3201 separated criminal intent into two categories: "intentional" conduct and "reckless" conduct. The term "knowing" was included in the definition of "intentional" conduct. K.S.A. 21-3201(b) ("Intentional conduct is conduct that is purposeful and willful and not accidental. As used in this code, the terms 'knowing,' 'willful,' 'purposeful,' and 'on purpose' are included within the term 'intentional.'"). Applying K.S.A. 21-3201, this court held insufficient evidence supported O'Rear's conviction because O'Rear intentionally shot his victim; a mental state incompatible with recklessness:

9

"The mental state of recklessness is incompatible with a mental state where a person acts with knowledge, willfulness, or purposefulness, meaning a person cannot act both intentionally and recklessly with respect to the same act. *State v. Shannon,* 258 Kan. 425, 429, 905 P.2d 649 (1995). Rather, an act is either intended or not intended; it cannot simultaneously be both. Consequently, guilt of one necessarily negates guilt of the other." 293 Kan. at 903.

After O'Rear committed the acts in question, the Legislature repealed K.S.A. 21-3201, and replaced it with K.S.A. 2018 Supp. 21-5202, which created three categories of criminal intent. K.S.A. 2018 Supp. 21-5202(b) delineates the "[c]ulpable mental states . . . classified according to relative degrees, from highest to lowest, as follows: (1) Intentionally; (2) knowingly; [and] (3) recklessly." And, unlike its predecessor K.S.A. 21-3201, K.S.A. 2018 Supp. 21-5202 explicitly provides:

"(c) Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally. If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally."

K.S.A. 2018 Supp. 21-5202(c) undermines Chavez' legal impossibility argument. Granted, *O'Rear*'s logic is still valid; it is *factually impossible* for a person not to intend to commit an act while simultaneously intending to commit the same act. That logic would create the statutory inconsistency that Chavez contends exists in the stalking statute, i.e., a presumption of knowing conduct under K.S.A. 2018 Supp. 21-5427(c) would negate the recklessness element of K.S.A. 2018 Supp. 21-5427(a)(3). But the Legislature has made it *legally possible* for a person to be guilty of a reckless act by knowingly or intentionally committing that same act. K.S.A. 2018 Supp. 21-5202(c) ("If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally."); see also *State v. Louis*, 305 Kan. 453, 461-62, 384 P.3d 1

10

(2016) (noting that under K.S.A. 2018 Supp. 21-5202, "[c]onduct designed to cause death—and, for that matter, conduct the actor knows is reasonably certain to cause death—is now sufficient to establish the defendant acted recklessly"); *State v. Green*, 55 Kan. App. 2d 595, 614, 419 P.3d 83 (2018) ("According to K.S.A. 2017 Supp. 21-5202[a]-[c], the State here satisfied the knowingly element in the knowing aggravated battery charges by proving the defendant intentionally committed the aggravated batteries."); 1 LaFave, Substantive Criminal Law, § 5.4(f) n.47 (3d ed. 2018) ("It is thus quite logical to provide, as does Model Penal Code § 2.02[5], that when recklessness suffices to establish an element of a crime, 'such element is also established if a person acts purposely or knowingly.'").

Consequently, the State had four ways by which it could prove the culpable mental state element of the charged crime. The State could prove that, after Chavez was served with the PFA order:  (1) he recklessly confronted Jaimes; (2) he knowingly confronted Jaimes; (3) he intentionally confronted Jaimes; or (4) he met the conditions to invoke the presumption of knowing conduct under K.S.A. 2018 Supp. 21-5427(c).

Given K.S.A. 2018 Supp. 21-5202(c)'s conflation of culpable mental states, one could make a case for the State having hit for the cycle on that element. But clearly the State established that Chavez acted knowingly. Chavez conceded knowing about the PFA order, yet he went to Jaimes' residence two days in a row to effect contact with the targeted person. Even Chavez' self-serving testimony describing the September 1 events had him breaking the chain on Jaimes' door in order to prevent her from discontinuing an unwanted contact. Certainly, viewing the evidence in a light most favorable to the State, a rational fact-finder could have found beyond a reasonable doubt that Chavez knowingly confronted Jaimes after being served with a court order not to do so. As we have discussed above, that knowing conduct satisfies the reckless element of the charged crime.

11

Chavez makes no credible argument about the sufficiency of the evidence on the other elements of the crime under K.S.A. 2018 Supp. 21-5427(a)(3). Any reasonable person would have feared for such person's safety when Chavez demanded entry into the house and forced open the door by breaking the security chain. And it was rational for the jury to conclude that Jaimes was actually placed in such fear when she responded by calling the police. Again, viewing the evidence in a light most favorable to the State, a rational fact-finder could have found all of the elements necessary to determine that Chavez was guilty of stalking, as charged.

## IMPLIED WAIVER OF PROTECTION FROM ABUSE ORDER

In the Court of Appeals, Chavez argued that the district court should have instructed the jury regarding implied waiver of the right to enforce the PFA and allowed defense counsel to argue that Jaimes had waived her right to enforce that civil order. He concedes that he did not request an implied waiver instruction in the district court. Chavez' petition for review points out that the Court of Appeals did not address this issue and did not explain why it declined to do so.

*Standard of Review*

We have a standard paradigm for reviewing jury instruction issues:

"[T]he progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and

12

degree of certainty set forth in *Ward.*" *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

Because Chavez failed to request the implied waiver instruction he now contends should have been given, the harmless error analysis is not governed by *Ward*. See K.S.A. 2018 Supp. 22-3414(3) (without a timely objection only clearly erroneous instructions may be assigned as error on appeal). An error in omitting an unrequested instruction is not reversible unless the appellate court is firmly convinced that the omission adversely affected the jury's verdict. *State v. Ingham*, 308 Kan. 1466, 1477, 430 P.3d 931 (2018). "Reversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3)." *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

*Analysis*

Chavez argues that the district court clearly erred in failing to instruct the jury that "'waiver is an intentional relinquishment of a known right and intention may be inferred from conduct.'" Chavez must first establish that this instruction was legally appropriate for this stalking prosecution.

Chavez argues that protected persons can, through conduct, waive their statutory right to enforce protection from abuse orders. But Chavez cites no authority—either controlling or persuasive—to support the notion that a protected person can waive enforcement of a district court's PFA order, much less to support the contention that a stalker is entitled to a jury instruction on an implied waiver of such an order. Moreover, Chavez acknowledges the State's reliance on *State v. Branson*, 38 Kan. App. 2d 484, 167 P.3d 370 (2007), which undermines his theory of implied waiver. His response is to assert that *Branson* was wrongly decided.

13

*Branson* held that consent is not a defense to the crime of violating a protective order. 38 Kan. App. 2d 484, Syl. ¶ 3. The Court of Appeals first noted that the applicable statute at that time did not mention consent. 38 Kan. App. 2d at 486; see also K.S.A. 2018 Supp. 21-5924 (same). Then, for multiple reasons, the panel refused to judicially create an affirmative defense to violating a protective order based on the protected person's consent to the violation.

The panel began by adopting the district court's suggestion that a consent defense derogates the issuing court's authority. 38 Kan. App. 2d at 487. Such a defense would allow a protected person to unilaterally modify or extinguish a court order without the consent—or even knowledge—of the issuing court.

In that vein, the *Branson* panel also reasoned that the defendant's actions implicated the State, as well as the victim. The prosecution of crimes is effected in the name of the State because criminal acts in general occur "'against the peace and dignity of the State of Kansas.'" 38 Kan. App. 2d at 487. Indeed, the statute defining the crime of violating a protective order is codified in Article 38 of the Kansas Statutes Annotated, which is titled "Crimes Affecting Government Functions." 38 Kan. App. 2d at 487; see also K.S.A. 2018 Supp. 21-5924 (continuing to house violation of a protective order in article titled "Crimes Affecting Government Functions").

From a legislative intent perspective, the *Branson* panel opined that the Legislature's decision to criminalize a violation of a PFA order reflects a concern for the public peace, as "[p]ersons granted a PFA order have already proven 'the allegation of abuse by a preponderance of the evidence' on a prior occasion[,] K.S.A. 60-3106(a)." 38 Kan. App. 2d at 488. And nothing in the text of the statute suggested "legislative intent to excuse an abuser just because the victim later consents to contact in violation of the PFA order." 38 Kan. App. 2d at 488. So, the panel reasoned, "[t]he legislature saw fit

14

to provide for court supervision over the parties, [which] continues until the PFA order is modified or dismissed." 38 Kan. App. 2d at 488.

Finally, the panel pointed to Branson's failure to cite to any authority that would support a holding that consent is a defense to a violation of a Kansas court's protective order. Moreover, the panel noted that its research had failed to disclose the existence of any such authority. 38 Kan. App. 2d at 488-89.

Chavez criticizes *Branson* for being too formalistic about the authority of the court that issues a PFA order. He asserts the court's authority must be subject to equitable principles and such doctrines make it clear that a protected person can waive enforcement of a known right through conduct. The cases Chavez relies upon to support his argument, however, are simply inapposite. One, *First Nat'l Bank of Omaha v. Centennial Park,* 48 Kan. App. 2d 714, 303 P.3d 705 (2013), is a mortgage foreclosure case, which is an equitable action dealing with property. Another, *State v. Hargrove*, 48 Kan. App. 2d 522, 293 P.3d 787 (2013), discusses how the invited error doctrine should be applied by appellate courts. A third, *In re Interest of J.M.D.*, 233 Neb. 540, 446 N.W.2d 233 (1989), is an out-of-state termination of parental rights.

In contrast, out-of-state authority addressing issues akin to that presented here does not align with Chavez' position. For example, in *State v. Dejarlais*, 136 Wash. 2d 939, 969 P.2d 90 (1998), the Washington Supreme Court rejected the defendant's argument that the district court erred in failing to give defense counsel's proposed instruction, "which would have told the jury a person is not guilty of violating a protection order if the person protected by that order expressly invited or solicited the defendant's presence." 136 Wash. 2d at 940. The court held "consent is not a defense to the charge of violating a domestic violence order for protection." 136 Wash. 2d at 942. Therefore, the defendant was not entitled to an instruction which inaccurately represented the law. 136 Wash. 2d at 942, 946. In reaching these conclusions, the court reasoned that

15

the violation of a protection order statute did not address consent; the Legislature did not affirmatively establish consent as a defense elsewhere in the statute; the statute reflected the Legislature's belief that there is a public interest in preventing domestic violence; and the statutory act required notice and a hearing to modify a protection order, whereas consent would result in de facto modification. 136 Wash. 2d at 943-45; see also *In re Shirley*, 28 A.3d 506, 513 (D.C. 2011) (holding "consent of the petitioner does not bar a conviction of criminal contempt for violation of a [civil protection order]"); *People v. Van Guilder*, 29 A.D.3d 1226, 1228, 815 N.Y.S.2d 337 (2006) (holding protected person's "express invitation to defendant to resume cohabitation—in violation of the orders of protection—provides no defense" to criminal contempt convictions for violating protection orders); *Hotsenpiller v. Morris*, No. 16CA1337, 2017 WL 2981215, at \*11 (Colo. App. 2017) (unpublished opinion) (holding consent is not an affirmative defense to the charge of violation of a civil protection order; while a defendant could argue that protected person's assent shows that the prosecution did not prove all the elements of a crime, such a defense is a traverse defense and "the defendant is not entitled to a consent defense instruction").

Legislatively, we note that K.S.A. 60-3101(b) instructs that the Protection from Abuse Act "shall be liberally construed to promote the protection of victims of domestic violence from bodily injury or threats of bodily injury and to facilitate access to judicial protection for the victims, whether represented by counsel or proceeding *pro se.*" The protection of domestic violence victims is diluted, not promoted, by allowing an abuser to avoid prosecution for violating the PFA order by claiming to have perceived that the victim's conduct manifested a consent to the violation.

Moreover, K.S.A. 2018 Supp. 60-3107(f) specifically provides that "[*t*]*he court may amend its order or agreement at any time upon motion filed by either party.*" (Emphasis added.) That explicit directive is contrary to the suggestion that a party can unilaterally amend the order without court involvement.

16

Perhaps the disconnect in Chavez' implied waiver argument is the suggestion that a court's protective order is intended to invest the protected person with a statutory right that is personally exercised at the protected person's discretion, rather than being a court order that restrains the defendant's actions as a matter of law. The protected person makes the initial decision to invoke the power of the law by initiating the PFA process. But if the ensuing PFA order is violated, the victim does not exercise any personal right. Rather, the State enforces the court-ordered restraints through law enforcement officers, prosecutors, and ultimately the judicial system.

In short, the protected person under a PFA order does not have the authority to unilaterally modify the court order by waiving its restraints or consenting to its violation. Consequently, in a prosecution under K.S.A. 2018 Supp. 21-5427(a)(3), the defendant is not entitled to a jury instruction on the principles of implied waiver of a PFA. Therefore, Chavez' implied waiver jury instruction was not legally appropriate and its omission was not error, much less clear error.

LIMITING INSTRUCTION

Chavez next argues the district court erred in failing to give the jury a K.S.A. 2018 Supp. 60-455 limiting instruction concerning the PFA.

*Standard of Review*

Chavez concedes he did not request the instruction that he now argues the district court erred in failing to provide; therefore, as in the previous issue, he must prove that failure to provide a limiting instruction was clearly erroneous. See also *State v. Breeden*, 297 Kan. 567, 582, 304 P.3d 660 (2013) (failure to object to the admission of K.S.A.

17

2012 Supp. 60-455[b] evidence does not waive the right to raise on appeal the issue of whether the failure to give a limiting instruction was clearly erroneous).

*Analysis*

Under K.S.A. 2018 Supp. 60-455, evidence of a prior crime or civil wrong is generally inadmissible solely to show propensity in criminal cases not involving a sex crime. When such evidence is admitted for other purposes, a limiting instruction is required. See *State v. Sims*, 308 Kan. 1488, 1505, 431 P.3d 288 (2018), *petition for cert. filed* April 29, 2019.

Chavez concedes that the PFA was admissible because the State was required to prove the existence of a valid protective order in order to convict Chavez of stalking. But Chavez argues it is equally apparent that a limiting instruction was appropriate because the evidence constituted evidence of prior crimes or civil wrongs under K.S.A. 2018 Supp. 60-455.

The Court of Appeals disagreed, siding with the State's argument that Chavez was not entitled to a limiting instruction because the existence of the PFA was an element of Chavez' crime of stalking. *Chavez*, 2017 WL 3321375, at \*9. The panel relied on *Charles*, where this court held "'K.S.A. 60-455 does not prohibit the admission of evidence regarding other crimes and civil wrongs if the evidence relates to acts committed as part of the events surrounding the crimes or civil wrongs at issue in the trial.'" *State v. Charles*, 304 Kan. 158, 175, 372 P.3d 1109 (2016), *abrogated on other grounds by State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017); see also *State v. Butler*, 307 Kan. 831, 861-62, 416 P.3d 116 (2018) (rejecting request for a limiting instruction for acts deemed to be part of the charged crime).

Chavez argues that the prior crimes/civil wrongs evidence in this case did not involve acts that were closely related to the charged crimes. Instead, he argues the prior acts at issue in the PFA occurred on another specified occasion and are entirely unrelated to the charged crimes, except for how they could prove an element of stalking. Chavez therefore argues that a limiting instruction was required to ensure that the jury did not use the prior acts evidence for an improper purpose.

Recently, in *Sims*, we considered a similar circumstance. Sims complained that the district court failed to sua sponte provide a limiting instruction on the evidence contained in the stipulation to a prior felony conviction Sims gave to satisfy an element of the charged crime. We recognized that caselaw finding no requirement for a limiting instruction for prior acts deemed to be part of the charged crime predated our decision in *State v. Gunby*, 282 Kan. 39, 49, 144 P.3d 647 (2006). *Gunby* held that the "'lines of cases allowing admission of [evidence of other crimes and civil wrongs] independent of K.S.A. 60-455 are contrary to long-held common law and the text of the statute itself.'" *Sims*, 308 Kan. at 1506 (quoting *Gunby*, 282 Kan. at 49). *Sims* assumed without deciding that *Gunby* would require a limiting instruction when a defendant stipulates to a prior crime even though the stipulation was proof of an element in the current prosecution. But *Sims* declined to reverse because the defense had not established clear error.

Similar to our approach in *Sims*, we will assume that the PFA in this case falls within the ambit of the K.S.A. 2018 Supp. 60-455 requirement for a limiting instruction. Nevertheless, Chavez has not established that the absence of a limiting instruction would have been a game changer in this case, i.e., was clearly erroneous.

Chavez points out that the PFA states "Plaintiff has proved the allegations of abuse by the preponderance of the evidence." But the PFA did not detail the allegations of abuse, and there was scant trial testimony regarding the specific abusive acts that supported the PFA. In fact, the prosecutor directed Jaimes not to discuss why she sought

19

the PFA, and when Jaimes testified that she obtained the PFA "because [Chavez] went to the house one time and he tried to get in from the window," the prosecutor again directed Jaimes not to discuss the details of the PFA. The specific events leading Jaimes to obtain the order were not discussed further, albeit Jaimes did testify generally without objection that Chavez was "always violent" and threatened to come to her house if she did not answer her phone.

Under the totality of the circumstances, the impact of the PFA and the testimony regarding the events leading to its issuance were de minimus in light of the evidence presented to establish the charged crimes. The jury's split decision indicates that it carefully considered the evidence presented on the charged crimes without being unduly influenced by the prior incidents upon which the PFA was issued. In sum, Chavez has failed to carry his burden to firmly convince us that the giving of a limiting instruction with respect to the PFA would have affected the jury's verdict.

CUMULATIVE ERROR

Finally, Chavez argues cumulative error denied him a fair trial. "'Cumulative trial errors, when considered collectively, may require reversal of the defendant's conviction when the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial.'" *State v. McLinn*, 307 Kan. 307, 334, 409 P.3d 1 (2018). "By necessity, if this court must apply a totality of the circumstances test, we must review the entire record and engage in an unlimited review." *State v. Cruz*, 297 Kan. 1048, 1074, 307 P.3d 199 (2013).

The Court of Appeals rejected Chavez' cumulative error challenge, reasoning Chavez had only established one error—that the district court lacked subject matter jurisdiction over Chavez' aggravated burglary conviction because Chavez was charged with acts that could have never resulted in the commission of a crime under Kansas law.

20

*Chavez*, 2017 WL 3321375, at \*6, 9. Because the State did not cross-petition, we assume this error stands. But on review we have assumed without deciding that it was error for the district court to fail to give a limiting instruction on K.S.A. 2018 Supp. 60-455 evidence.

The error found by the Court of Appeals led to a reversal of Chavez' aggravated burglary conviction. Chavez does not explain how that corrected error "transcends the effect of . . . individual error[]" and taints the other convictions. *Cruz*, 297 Kan. at 1074. Nevertheless, combining that error with the assumed K.S.A. 2018 Supp. 60-455 limiting instruction error does not create the substantial prejudice that would deny Chavez his right to a fair trial. Chavez has failed to establish reversible cumulative error.

CONCLUSION

The portion of the Court of Appeals' decision reversing Chavez' aggravated burglary conviction stands, as this issue is not before our court. The portion of the Court of Appeals' decision affirming Chavez' convictions for stalking and criminal threat is affirmed.

Affirmed.

21